IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WEBSTER BANK NA, *Plaintiff/Appellee,*

*v.*

WILLIAM D. MUTKA, *Defendant/Appellant.*

No. 1 CA-CV 20-0128
FILED 2-9-2021

Appeal from the Superior Court in Maricopa County
No. CV2017-002343
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Leonard J. McDonald, Jr., Michael F. Bosco
*Counsel for Plaintiff/Appellee*

Thomas A. Morton, PLLC, Phoenix
By Thomas A. Morton
*Counsel for Defendant/Appellant*

---

**OPINION**

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1 William D. Mutka appeals the judgment in favor of Webster Bank NA on its claim for breach of a home-equity line of credit agreement. Mutka argues the suit was untimely because the limitations period began to accrue upon his first missed payment. *See Mertola, LLC v. Santos*, 244 Ariz. 488, 492, ¶ 21 (2018). We hold that the statute of limitations on a home equity line of credit with a defined maturity date "commences on the due date of each matured but unpaid installment and, as to unmatured future installments, the period commences on the date the creditor exercises the optional acceleration clause." *Navy Federal Credit Union v. Jones*, 187 Ariz. 494 (App. 1996). We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 In February 2007, Mutka and Webster Bank entered into a home equity consumer revolving loan agreement, also known as a home equity line of credit ("HELOC"). The agreement allowed Mutka to borrow up to $73,000 over roughly the first fifteen years, secured by a deed of trust on Mutka's home. During that period, the agreement required Mutka to make monthly interest payments but did not require him to pay anything toward the principal. The agreement provided that during the second fifteen years, Mutka would have to make monthly principal payments equal to 1/180th of the outstanding loan balance, plus interest and any unpaid late or other charges. The loan was payable in full in February 2037.

¶3 Mutka failed to pay the monthly interest due in April 2011. At the time, he had drawn $72,716.27 in principal. Mutka made no further payments on the loan. Six and a half years later, Webster Bank exercised its right under the loan agreement to accelerate the debt and sued Mutka to collect the balance.

¶4 Mutka moved for summary judgment, arguing the applicable six-year statute of limitations barred Webster Bank's claim. The superior

court denied Mutka's motion, and after a trial, the court entered judgment in favor of Webster Bank for $98,063.93.

¶5        Mutka timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

¶6        The interpretation of a statute of limitations is a legal question, which we review de novo. *Mertola*, 244 Ariz. at 490, ¶ 8. Pursuant to A.R.S. § 12-548(A),

> An action for debt shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward, if the indebtedness is evidenced by or founded on either of the following:
>
> 1. A contract in writing that is executed in this state.
>
> . . . .

¶7        Webster Bank filed its complaint in December 2017, more than six years after Mutka defaulted by failing to make his monthly interest payment in April 2011. When a fixed debt is payable in installments, the statute of limitations "commences on the due date of each matured but unpaid installment and, as to unmatured future installments, the period commences on the date the creditor exercises the optional acceleration clause." *Navy Federal*, 187 Ariz. at 494. Applying that principle here, the superior court entered judgment for Webster Bank for the unpaid principal balance and for all interest payments that came due within the six-year period before the bank filed suit.

¶8        Mutka, however, argues a default on a HELOC is governed by *Mertola*, which held that the *Navy Federal* rule does not apply to credit card debt. *Mertola* held that "a cause of action to collect the entire outstanding [credit card] debt accrues upon default: that is, when the debtor first fails to make a full, agreed-to minimum monthly payment." *Mertola*, 244 Ariz. at 492, ¶ 21. Under that rule, Mutka argues, Webster Bank's claim was barred because it filed its complaint eight months too late.

¶9        In *Mertola*, our supreme court expressly declined to decide whether *Navy Federal* would apply to any debt other than that arising from a credit card. *Donges v. USAA Federal Savings Bank*, 391 F. Supp. 3d 907, 911 (D. Ariz. 2019) held that the *Navy Federal* rule applied to a HELOC with a

defined maturity date. We agree with the ruling in *Donges* and hold that, as in *Navy Federal*, the statute of limitations does not begin to run on future installments due under a HELOC until the lender accelerates the debt.

**¶10** In distinguishing *Navy Federal*, the supreme court in *Mertola* emphasized the difference between a "closed-end" debt and a credit-card debt. In a closed-end debt such as a promissory note or the installment debt at issue in *Navy Federal*, "the principal amount of the debt is fixed and there is a 'defined schedule of repayment' specifying precisely the size of each payment . . . and when the payment falls due, 'until the debt is fully repaid.'" 244 Ariz. at 291, ¶ 16. The court said that, by contrast, although a credit card may have a credit limit, the amount the borrower owes each month and the date the principal balance will be due may fluctuate depending on the amount charged and changes in the interest rate. *Id.* The court expressed concern that if the *Navy Federal* rule were applied to credit card debt, a creditor could unilaterally extend the statute of limitations by refraining from exercising its right to accelerate, allowing interest to accrue at higher default rates. *Id.* at ¶ 19. Additionally, the court pointed out, credit card debt is often unsecured, so creditors do not have the incentive to accelerate the debt immediately by exercising a right to repossess or foreclose. *Id.*

**¶11** Mutka argues his HELOC resembled a credit card account because it had an established billing cycle, annual fee, over-limit fees, and terms on which Webster Bank could limit or suspend his right to borrow. The differences between a credit card account and a HELOC are more significant, however, than the similarities as they pertain to the statute of limitations. Like the HELOC in *Donges*, Mutka's line of credit agreement specified a maturity date on which the entire debt would become due.[1] Although the ultimate amount Mutka would borrow was not known until the end of the initial fifteen-year draw period, after that date, the amount of the principal indebtedness would be fixed, and the loan agreement set out a repayment schedule. Mutka's HELOC also was secured by real property, giving Webster Bank an additional incentive to collect on its debt through foreclosure. *See Mertola*, 244 Ariz. at 492, ¶ 19.

---

[1] Mutka contends his HELOC did not have a defined maturity date, but the loan agreement he executed expressly stated: "If not sooner paid, I promise to pay all amount I owe under this Agreement on the Maturity Date stated in subsection 1.d. above."

**¶12**      Mutka cites cases from other jurisdictions that he asserts "treat a home equity line of credit as a revolving credit agreement." However, as Webster Bank notes, the cases are not compelling because they do not analyze how the statute of limitations applies to a HELOC. Although Mutka contends *Donges* is not controlling authority on Arizona law, we may consider it for its persuasive value. *Arizonans for Second Chances, Rehab., & Pub. Safety v. Hobbs*, 249 Ariz. 396, 412, ¶ 60 n.6 (2020) (citing district court orders "as persuasive authority"). And, contrary to his contention, the court in *Donges* did not mistakenly conclude that *Mertola* applied only to credit-card debt; it recognized that in *Mertola* "the Arizona Supreme Court expressly declined to decide which rule applies for other types of debt." *Donges*, 391 F. Supp. 3d at 912 (internal quotations omitted).

**¶13**      As explained above, the maturity date in Mutka's agreement prevents Webster Bank from unilaterally extending the statute of limitations period. Additionally, Webster Bank was deterred from failing to act because it can only collect monthly payments within the six-year statute of limitations. Webster Bank was essentially penalized for its delay in filing and unable to collect on payments outside the statute of limitations between April 2011 and December 2011.

**¶14**      Finally, there is no meaningful distinction between a creditor foreclosing on the secured property, as was the case in *Donges*, and this case, where Webster Bank was only trying to collect a money judgment.[2]

## CONCLUSION

**¶15**      For the foregoing reasons, we affirm. Both parties request their attorneys' fees incurred on appeal pursuant to A.R.S. § 12-341.01, and Webster Bank additionally requests its attorneys' fees pursuant to the parties' loan agreement. As the prevailing party and pursuant to the parties' agreement, Webster Bank may recover its

---

[2]      Although we agree with the ruling in *Donges* in that the *Navy Federal* rule applies to a HELOC with a defined maturity date, and now hold that limitations does not begin to run on future installments due under a HELOC until the lender accelerates the debt, we note that in *Bridges v. Nationstar Mtg.*, 1 CA-CV 19-0556, 2021 WL 126562 (Ariz. App. Jan. 14, 2021) we recently held that "absent an express statement of acceleration in the notice of trustee's sale, or other evidence of an intent to accelerate, recording a notice of trustee's sale, by itself, does not accelerate a debt."

reasonable attorneys' fees and taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA